B1040 (Form 1040) (12/24)

# ADVERSARY PROCEEDING COVER SHEET
(Instructions on Reverse)

**ADVERSARY PROCEEDING NO.**

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Hawaii Brewery Development Co., Inc. | Hawaiian Springs, LLC, Leonite Fund I, LP, and Robert L. Stevens, solely in his capacity as an alleged Receiver |

**ATTORNEY(S)** (Firm Name, Address, Telephone No.)

Klein Law Group, LLLC
Attn: Kurt W. Klein
American Savings Bank Tower
1001 Bishop Street, Suite 2788
Honolulu, Hawaiʻi 96813
(808) 591-8822

**ATTORNEY(S)** (If Known)

**PARTY** (Check One Box Only)
☑ Debtor ☐ U.S. Trustee
☐ Creditor ☐ Trustee ☐ Other

**PARTY** (Check One Box Only)
☐ Debtor ☐ U.S. Trustee
☐ Creditor ☐ Trustee ☑ Other

**CAUSE OF ACTION** (Write a brief statement of cause of action, including all U.S. statutes involved.)

Debtor seeks a determination that defendants have no rights in a lease for certain property in Hawaii owned by Debtor and owe Debtor damages for the breach of lease provisions

## NATURE OF SUIT

(Number up to 5 boxes with the lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

*Note: Only a complaint including an objection to discharge under 11 U.S.C. § 727 will defer the clerk's entry of the debtor's discharge in bankruptcy.*
*A complaint to determine the dischargeability of a debt under 11 U.S.C. § 523 does not affect the entry of a discharge with respect to other debts.*

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11 – Recovery of money/property - § 542 turnover of property
☐ 12 – Recovery of money/property - § 547 preference
☐ 13 – Recovery of money/property - § 548 fraudulent transfer
☑ 14 – Recovery of money/property – other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☐ 21 – Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31 – Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41 – Objection/revocation of discharge - § 727(c), (d), (e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51 – Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66 – Dischargeability - § 523(a)(1), (14), (14A) priority tax claims
☐ 62 – Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 – Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61 – Dischargeability - § 523(a)(5), domestic support
☐ 68 – Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63 – Dischargeability - § 523(a)(8), student loan
☐ 64 – Dischargeability - § 523 (a)(15), divorce or separation obligation (other than domestic support)
☐ 65 – Dischargeability – other

**FRBP 7001(g) – Injunctive Relief**
☐ 71 – Injunctive relief – imposition of stay
☐ 72 – Injunctive relief – other

**FRBP 7001(h) – Subordination of Claim or Interest**
☐ 81- Subordination of claim or interest

**FRBP 7001(i) – Declaratory Judgment**
☑ 91 – Declaratory judgment

**FRBP 7001(j) – Determination of Removed Action**
☐ 01 – Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa et seq.
☐ 02 – Other (e.g.,other actions that would have been brought in state court if unrelated to bankruptcy case)

☑ Check if this case involves a substantive issue of state law
☐ Check if this is asserted to be a class action under FRCP 23

☐ Check if a jury trial is demanded in complaint

Demand: $ TBD

Other Relief Sought:

U.S. Bankruptcy Court - Hawaii #26-90013 Dkt # 1 Filed 05/15/26 Page 1 of 26

B1040 (Form 1040) (12/24)

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR<br>Hawaii Brewery Development Co., Inc. | BANKRUPTCY CASE NO.<br>26-00311 | |
|---|---|---|
| DISTRICT IN WHICH CASE IS PENDING<br>Hawaii | DIVISION OFFICE | NAME OF JUDGE<br>Hon. Robert J. Faris |

## RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT IN WHICH ADVERSARY PROCEEDING IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Kurt W. Klein | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Kurt W Klein | |
| DATE<br>5/15/2026 | | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet. When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

BOSKO PETRICEVIC, AAL, LLLC

BOSKO PETRICEVIC
P.O. Box 38
Honolulu, Hawai'i 96810
Telephone: (402) 301-3716
Email: *boskolaw@gmail.com*

KLEIN LAW GROUP, LLLC

ROBERT G. KLEIN
KURT W. KLEIN
DAVID A. ROBYAK
JAMES M. YUDA
JASON W. JUTZ
American Savings Bank Tower
1001 Bishop Street, Suite 2788
Honolulu, Hawai'i 96813
Telephone: (808) 591-8822
Email: *rgk@kleinlg.com, kwk@kleinlg.com,
dar@kleinlg.com, jmy@kleinlg.com, jwj@kleinlg.com*

Attorneys for Plaintiff
HAWAII BREWERY DEVELOPMENT, CO., INC., Debtor and Debtor in Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re: | CASE NO. 26-00311 (RJF)<br>(Chapter 11 – Subchapter V) |
| HAWAII BREWERY DEVELOPMENT CO., INC., | |
| Debtor | Adversary No. 26- _____ |
| _____ | |
| HAWAII BREWERY DEVELOPMENT CO., INC., | *[Caption continued on next page]* |
| Plaintiff, | |

vs.

HAWAIIAN SPRINGS, LLC, a
Delaware limited liability company dba
HAWAIIAN SPRINGS WATER;
LEONITE FUND I, LP,
and ROBERT L. STEVENS, solely in
his capacity as an alleged Receiver

Defendants.

*[Caption continued from previous page]*

**COMPLAINT**

## COMPLAINT

Plaintiff HAWAII BREWERY DEVELOPMENT CO., INC., a Hawaiʻi Corporation ("**Plaintiff**" or "**HBDC**"), by and through its undersigned counsel, Bosko Petricevic, AAL, LLLC and Klein Law Group, LLLC, and for its Complaint, among other things, to determine that:

(a)     the Lease (as defined below) has been breached and was or should be terminated; and

(b)     none of Defendant HAWAIIAN SPRINGS, LLC ("**HSW**"), LEONITE FUND I, LP, ("**Leonite**") or ROBERT L. STEVENS (the "**Receiver**") solely in his capacity as an alleged Receiver, has any rights under the Lease (as defined below).

2

Plaintiff hereby alleges and avers as follows against HSW, Leonite, and the Receiver (collectively, "Defendants"):

## PARTIES & PROPERTY & LEASE

1.  HBDC is and was a domestic profit corporation organized and existing under the laws of the State of Hawaiʻi and the owner of that certain real estate parcel comprising approximately seven (7) acres of land located at 16-305 Volcano Road, Keaau, Island and County of Hawaiʻi, State of Hawaiʻi, further identified as Tax Map Key ("**TMK**") No. (3) 1-6-141-001 (the "**Property**").

2.  HSW is a Delaware limited liability company dba HAWAIIAN SPRINGS WATER.

3.  Upon information and belief, Leonite is a limited partnership organized under the laws of the State of Delaware.

4.  Upon information and belief, the Receiver is an individual resident of the State of Colorado.

5.  On or about June 1, 2001, HBDC, as landlord, entered into the Lease with Hawaiian Natural Water Company, Inc. as lessee.

6.  On or about November 20, 2006, Hawaiian Natural Water Company, Inc., with the consent of HBDC, assigned its interest in the Lease to HSW.

3

7. HBDC is also the legal owner of the Premises[1], as defined in the Lease, a copy of which, including various amendments, is attached to this Complaint as Exhibit "A".

8. Upon information and belief, Leonite claims that it has an interest in the Lease by reason of being a secured creditor of HSW under the Uniform Commercial Code.

9. Upon information and belief, the Receiver was appointed as a receiver of the property of HSW at the request of Leonite and claims that he has an interest in, or right to control or sell, the Lease.

## JURISDICTION AND VENUE

10. On April 16, 2026 (the "**Petition Date**"), HBDC filed a voluntary petition under Subchapter V of Chapter 11 of the Bankruptcy Code, commencing a bankruptcy case before the United States Bankruptcy Court for the District of Hawaii (the "Bankruptcy Court"), designated as Case No. 26-00311.

11. HBDC is a debtor and debtor in possession in this Chapter 11 case.

---

[1] "**Premises**", as used herein, shall have the same meaning as the term is used in the Lease, including collectively: (1) the Property; (2) the water well located on the Property; and (3) the appurtenant pumping equipment described in Exhibit B to the Lease.

4

12. HBDC, as debtor in possession, has all the rights, powers, and duties specified in 11 U.S.C. § 1107 of a trustee serving in a case under chapter 11 of the Bankruptcy Code.

13. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

14. HBDC's claims make this a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and 28 U.S.C. §§ 157(b)(2)(A), (B), (E), (K), (M), and (O).

15. HBDC consents to the entry of final order or judgment by the Bankruptcy Court.

16. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**FACTUAL BACKGROUND**

17. Plaintiff is the legal owner of the Property, including the Premises.

18. Under the terms of the Lease, in exchange for the lessee's performance of its obligations under the Lease, the lessee is permitted to "peaceably hold and enjoy the Premises for the [t]erm [of the Lease]."

19. HSW's obligations under the Lease included, without limitation, the following:

• Lease § 3 "Payment of Rent and Gross Excise Tax" required lessee to make payment during the term of the Lease on the first day of each and every month,

5

equal to the "Base Rent" as defined therein, plus "Additional Rent" as defined therein and payable on a quarterly basis, with interest accruing at the rate of one percent (1%) per month on all Base Rent or Additional Rent which are not paid on or before their due date (collectively, "**Rent**"); and

- Lease § 4 "Payment of Charges and Taxes" required lessee to pay "directly, before the same become delinquent, all assessments and taxes levied on the [HSW Site] and the costs of all utilities and services consumed or used by [HSW] on the [HSW Site]."

- Lease § 7 "Maintenance and Repair of Premises" required lessee to make, build, maintain, and repair all improvements, at its own expense, during the whole of the term. In addition, the Lease required HSW to operate, maintain, repair and replace the equipment, as defined in the Lease, at its sole expense.

- Lease § 14 "Liability Insurance" and 15 "Casualty Insurance" required Lessee to obtain and maintain Liability and Casualty Insurance policies.

- Pursuant to the Lease, § 19 "Default" provides that if lessee fails to perform any of the covenants and agreements contained in the Lease, or fails to timely pay the Rent when due and payable, and "either of such failures continues for thirty (30) days after written notice thereof from [HBDC] . . . [HBDC] may at once enter into and retake possession of the Premises and any improvements thereon, or any part thereof and at its option to terminate this Lease."

6

U.S. Bankruptcy Court - Hawaii  #26-90013  Dkt # 1  Filed  05/15/26  Page 8 of 26

## The First Proceeding and Repayment Plan

20. HSW has engaged in a pattern of failing and otherwise refusing to perform in good faith under the Lease to HBDC's substantial and continuing detriment.

21. HBDC was forced to file a breach of contract action against HSW on February 9, 2023, in the Circuit Court of the Third Circuit, State of Hawaii, Civil No. 3CCV-23-054.

22. On April 11, 2023, HBDC and HSW executed that certain Term Sheet by and between HBDC and HSW ("**Term Sheet**").

23. The Term Sheet served as a repayment plan to enable HSW to come and remain current on all of its outstanding payments that were, at the time, due and owing HBDC under the Lease and a Solar Energy Power Purchase Agreement dated June 4, 2014 (the "**PPA**") pursuant to which HBDC provides power to the Premises.

24. Under the PPA, HBDC agreed to install, own, finance, and operate a 300kW solar energy facility ("**Energy System**") located on the property adjacent to the lot leased by HSW.

25. The PPA requires HBDC to supply HSW with energy generated from the Energy System, and for HSW to purchase all of the energy output for its operations.

7

26. HBDC secured a $1.1 million loan to install the Energy System in accordance with the PPA, and HSW benefitted from HBDC's efforts and expenditure through reduced requirements and rates for electricity for its operation on the Premises.

27. As part of the Term Sheet, HBDC agreed to not actively prosecute the first lawsuit while the Term Sheet was in effect.

### HSW Defaulted on the Term Sheet

28. While HSW timely paid the first payment owing under the Term Sheet, just two weeks later, HSW again defaulted under the Lease by failing to timely pay the May 2023 rent.

29. HBDC timely sent a notice of default on May 4, 2023.

30. HSW breached its obligations under the Term Sheet by failing to make its second payment due by May 15, 2023.

31. On May 17, 2023, HBDC sent HSW a written demand to cure its default under the Term Sheet by May 19, 2023.

32. HSW cured its default on May 18, 2023.

33. HSW eventually, but belatedly, cured its past defaults under the Term Sheet and paid rent for May 2023.

8

34. Thereafter, and consistent with its prior pattern and practice, HSW defaulted under the Lease by failing to make payments to HBDC.[2]

**HSW's Defaults Continued Through Late 2023**

35. HSW continued to fail and otherwise refused to tender Rent payments due and owing HBDC under the Lease for the months of August, September, October, and November 2023.

36. In accordance with the Lease, HBDC provided written notices to HSW of its corresponding defaults under the Lease on or around August 7, 2023, September 5, 2023, October 5, 2023, and November 3, 2023, for the Rent payments HSW failed and otherwise refused to tender for the respective months.

37. For the months of August, September, and October, HSW failed to cure its default within thirty (30) days after HBDC's written notice.

38. On November 6, 2023, HBDC sent written notice to HSW that HBDC was exercising its right to terminate the Lease as provided for therein (the "**Termination Letter**"), and that the parties' rights and obligations under the Lease were void and without effect, including, without limitation, HSW's right to remain on the Property.

---

[2] From 2022 through 2023, HBDC issued thirty-eight (38) default notices related to the Lease, PPA, and HSW's failure to pay real property tax.

9

39. HBDC requested that HSW vacate the Property on or prior to thirty (30) days of the date of the Termination Letter, *i.e.*, December 6, 2023.

40. HBDC informed HSW that unless HSW voluntarily vacated the Property on or prior to November 16, 2023, HBDC would pursue summary possession and ejectment.

41. HSW did not respond to the Termination Letter and has not agreed to voluntarily vacate the Property to date, despite the fact that it has no rights to possess, and no interest in, the Property.

42. HSW's nonpayment of the above-enumerated payments, and additional amounts which became due during the remaining term of the Lease, caused substantial financial harm to HBDC notwithstanding any subsequent cure attempts.

### HSW's Unauthorized Assignment to Leonite

43. On or around December 26, 2023, HBDC received a wire transfer deposit in the amount of $134,000.00 from a third party ("**Cure Payment**").

44. Under Hawaii law, HRS § 666-5, "the acceptance of rent by the landlord during the litigation shall not be construed as a recognition of the tenancy and shall be without prejudice to the landlord's legal rights at the inception of the proceedings."

45. The description of the wire transfer transaction read: "WIRE TRANSFER CREDIT 20233600147800 ORG LEONITE FUND I, LP OBI."

10

46. Upon information and belief, the wire transfer came from Leonite, an entity that has identified itself as a secured creditor of HSW.

47. The Cure Payment did not compensate HBDC fully for HSW's track record of repeatedly defaulting on the Lease and forcing HBDC to seek relief from the court on multiple occasions.

48. In or about March 2025, the Receiver transmitted a letter of intent offering $50,000.00 to HBDC for, among other consideration, an agreement to transfer the Lease from HSW to "a new entity" in the event of an asset sale.

49. Upon information and belief, the "new entity" referred to was Leonite.

50. HBDC rejected the March 2025 offer.

51. HBDC has never consented to any assignment, transfer, or encumbrance of the Lease to Leonite or any entity affiliated with Leonite.

52. HBDC has never been provided with any documentation regarding any purported assignment, transfer, or encumbrance of HSW's leasehold interest to Leonite or any entity affiliated with Leonite.

53. The fact that Leonite tendered payment on HSW's behalf and has identified itself as a secured creditor of HSW suggests that HSW may have sought to assign or transfer the Lease to Leonite, or sought to grant Leonite a security interest in the Lease.

11

54. Even if HSW gave Leonite a security interest in HSW's property, under the Uniform Commercial Code of Hawaii (or any other state), such a security interest does not transfer any rights in real property, including a lease for real property.

55. Further, any such purported assignment, transfer, or encumbrance was made without HBDC's consent as required by § 11 of the Lease.

56. Pursuant to § 11 of the Lease, any attempt by HSW to assign, transfer, or encumber its leasehold interest without HBDC's prior written consent is void and constitutes a default under the Lease.

57. HSW's unauthorized assignment, transfer, or encumbrance of its leasehold interest to Leonite constitutes a material breach of the Lease.

### HSW's Bottling Operations Are Not Profitable

58. HSW's water bottling operations are not producing sufficient sales to be profitable.

59. HSW's profit and loss statement for 2025 shows a net loss of $2,000,000.00.

60. HSW's profit and loss statement for 2025 also shows that the cost of its goods and services is 180%, meaning HSW incurs a $1.80 expense for every $1.00 of sales.

61. Given HSW's losses, HBDC has never received any of the "Additional Rent" provided for under § 3 of the Lease.

12

U.S. Bankruptcy Court - Hawaii  #26-90013  Dkt # 1  Filed  05/15/26  Page 14 of 26

62. Regular receipt of Additional Rent was a crucial and material term, of the Lease.

## HSW Failed to Maintain and Repair Damage to the Premises

63. The Lease at § 7 required HSW to maintain and repair all improvements and Equipment on the Premises at HSW's sole expense.

64. In pertinent part, § 7 of the Lease, titled "Maintenance and Repair of Premises," states as follows:

> Except as otherwise provided in this Lease, Lessee will, at its own expense, during the whole of the Term, make, build, maintain and repair all improvements, including, but not limited to sewers, drains, pavements and parking areas which now exist, or are later built by Lessee or which may be required by law to be made, built, maintained and repaired upon the Property or any part of it. In addition, Lessee shall operate, maintain, repair and replace, if necessary, the Equipment, at Lessee's sole expense. Lessee shall be entitled to the benefit of any warranty relating to the Equipment as may be available or provided to Lessor.

65. On April 27, 2024, HBDC's inspection ("**2024 Inspection**") of the Premises discovered that $269,120.97 in remediation costs were required to repair the building to working order.

66. The 2024 Inspection revealed that warehouse and tunnel roofing repairs alone were projected to cost approximately $195,000.00.

13

U.S. Bankruptcy Court - Hawaii   #26-90013   Dkt # 1   Filed  05/15/26   Page 15 of 26

67. Despite the necessary repairs that HSW and/or Leonite were required to pay for under the Lease, the Receiver, according to his own reports, has only spent approximately $6,000.00 on repairs and facility maintenance.

68. HSW has failed to care for and repair the Premises and the equipment on the Premises.

69. Upon information and belief, it will cost over $250,000 to repair the damage to, or to effect the repairs necessary for the Premises and the equipment on the Premises.

70. Defendants have therefore failed to maintain and repair the Premises in violation of the Lease.

71. HBDC at all times performed, and continues to be ready, willing, and able to perform its obligations as lessor under the Lease.

**HSW has Failed to Allow HBDC Access to Water from the Premises**

72. The Lease at § 6 requires HSW to allow HBDC to extract water from the well on the Premises for certain commercial uses.

73. In pertinent part, § 6 of the Lease states as follows:

> Lessor shall be entitled to extract water from the Well to meet its requirements for the brewing of beer or the manufacture of beverages other than natural water, but only to the extent that such activity by Lessor does not interfere with, restrict or limit Lessee's business as currently conducted or as it may be reasonably expected to expand in the future (based upon plans or other evidence), provided that Lessor shall not be entitled to use

14

water from the Well or any other well located on the Property for irrigation, cleaning or purposes other than beverage production as described above and provided, further, that in no event shall Lessor be entitled to more than fifty percent (50%) of water production from the Well. Lessor shall meter its water extraction and Lessee shall not be liable to Lessor for any Additional Rent with respect to water pumped for Lessor's use. At the end of each calendar year, Lessor shall pay Lessee its pro rata share of the utility; maintenance, repair and replacement costs for the Equipment, which shall be based upon the ratio which Lessor's gallonage bears to the total gallonage pumped from the Well by Lessor and Lessee that year.

74. HSW has prohibited and interfered with HBDC's right to extract water from the well on the Premises.

75. Leonite and/or the Receiver have also prohibited and interfered with HBDC's rights under § 6 of the Lease.

76. HBDC has been damaged, in an amount to be proven at trial, by reason of Defendants' interference with HBDC's right to extract water from the Premises.

**<u>Defendants' Failure to Procure Insurance</u>**

77. The Lease at § 14 requires lessee to maintain comprehensive general liability insurance with respect to the Premises.

78. In pertinent part, § 14 of the Lease states as follows:

Lessee shall obtain and keep in effect and maintain at Lessee's own expense during the Term a policy of comprehensive general liability insurance with respect to the Premises with a responsible insurance company in the sum of not less than Two Million and no/100 Dollars ($2,000,000.00) coverage for personal injury and death

15

U.S. Bankruptcy Court - Hawaii  #26-90013  Dkt # 1  Filed  05/15/26  Page 17 of 26

and Five Hundred Thousand and no/100 ($500,000.00) Dollars coverage for property damages, which policy or policies shall name Lessor as an additional insured.

79. The Lease at § 15 requires lessee to maintain an "all-risk" casualty or hazard insurance policy that covers replacement costs of all equipment, buildings, and improvements on the Premises.

80. In pertinent part, § 15 of the Lease states as follows:

Lessee shall obtain and keep in effect and maintain at Lessee's own expense during the Term a policy or policies of "all-risk" casualty or hazard insurance with a responsible insurance company in the sum of the replacement cost of the Equipment and all buildings and other insurable improvements on the Property, which policy or policies shall name Lessor as an additional insured. Should Lessee fail to procure and/or maintain such insurance, Lessor shall have the right to so procure and/or maintain such policy or policies, and charge Lessee the amount of the premiums paid for.

81. Upon information and belief, Defendants did not procure a comprehensive general liability insurance policy with respect to the Premises as called for under the Lease.

82. Defendants did not procure an "all-risk" casualty or hazard insurance policy.

83. Since November 20, 2023, Defendants have failed to obtain and maintain the required policies and HBDC has had to purchase such policies to assure that the Premises were properly insured.

16

84. Because Defendants failed to properly maintain insurance under the Lease, HBDC was not named as an additional insured as required by the Lease.

85. Defendants' failure to procure appropriate insurance required under the Lease constitutes a material breach of the Lease.

### HSW's Multiple Defaults Harmed HBDC

86. As a result of HSW and Leonite's numerous breaches and defaults under the Lease, their continued failure to maintain the property, their failure to obtain their own insurance, their failure to allow HBDC access to water on the Premises, and HSW's unauthorized assignment of the lease to Leonite, HBDC has incurred, and continues to incur, additional fees and costs, all of which constitute damages due and owing HBDC under the Lease.

87. Further, as a result of the termination of the Lease, neither HSW nor Leonite has a right to possess, nor any interest in, the Premises.

88. As a result, HBDC is entitled to summary possession of the Premises, and HSW is subject to eviction or ejectment.

### COUNT I - SUMMARY POSSESSION

89. HBDC hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

90. Upon information and belief, HSW was in possession of the Premises until HSW's unauthorized assignment of the Lease to Leonite.

17

91. Because of its improper and unauthorized attempt to transfer the Lease to Leonite, HSW has relinquished control over operation of the water bottling facility thereon to Leonite and/or the Receiver.

92. HBDC sent written notice to HSW on November 6, 2023, demanding that HSW vacate the Premises on or before December 6, 2023.

93. HBDC terminated the Lease on November 6, 2023, pursuant to § 19 of the Lease.

94. HBDC sent written notice to Leonite on or about February 12, 2024 and March 25, 2024, to vacate the Premises.

95. HSW's right to possession, if any, has terminated.

96. Leonite's right to possession of the Premises never existed.

97. Because the Lease and PPA have been terminated pursuant to the terms therein, Defendants are not entitled to possession of, nor may they continue to occupy, the Premises.

98. HBDC demanded in writing that HSW voluntarily vacate the Property.

99. HSW has refused to voluntarily vacate the Property.

100. HSW (including its agents and/or tenants) is unlawfully occupying the Property.

101. If Leonite or the Receiver is occupying or controlling the Premises, it is doing so unlawfully and without any right.

18

102. Accordingly, HBDC is entitled to an order determining that none of HSW, Leonite or the Receiver is entitled to possession of the Premises and requiring them to immediately turn over possession to HBDC.

## COUNT II - EJECTMENT

103. HBDC hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

104. The Lease and PPA have been terminated pursuant to the terms agreed to by the parties therein.

105. HBDC is entitled to immediate use, control, and possession of the Premises to the exclusion of HSW, Leonite, and the Receiver, and anyone else occupying and/or possessing the Premises by, through, or under HSW.

106. HBDC is entitled to judgment for: (a) ejectment and writ of possession authorizing and directing the removal of HSW, Leonite, the Receiver and any others claiming by, through, or under HSW or Leonite, from the Premises; and (b) placing HBDC back in possession of the Premises, and allowing HBDC to dispose of any personal property left on the Premises.

## COUNT III - TRESPASS ON REAL PROPERTY

107. HBDC hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

19

108. Defendants intentionally, recklessly, and/or negligently trespassed on HBDC's property by continuing to occupy the Premises without HBDC's consent.

109. Defendants' acts and omissions have deprived HBDC of its lawful use and enjoyment of the Premises.

110. Defendants' trespass has caused damage to HBDC in an amount to be proven at trial.

111. HBDC is entitled to a judgment against Defendants for damages caused by such trespass.

## COUNT IV - DECLARATORY RELIEF

112. HBDC hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

113. An actual controversy exists between HBDC, HSW, Leonite, and the Receiver regarding whether (1) Defendants have defaulted under the Lease and PPA for the reasons alleged herein, (2) Defendants have any right, title, or interest in the Premises, and (3) Defendants are entitled to possession of the Premises.

114. The controversy is ripe for adjudication.

115. A declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding.

U.S. Bankruptcy Court - Hawaii   #26-90013   Dkt # 1   Filed  05/15/26   Page 22 of 26

116. HBDC is entitled to a determination and declaration that the Lease has terminated, that HBDC is the sole party entitled to possession of, and rights in the Premises.

## COUNT V – BREACH OF CONTRACT: UNAUTHORIZED ASSIGNMENT

117. HBDC hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

118. The Lease contains a specific provision prohibiting assignment without HBDC's prior written consent.

119. Section 11 of the Lease expressly provides that HSW may not, without the prior written consent of HBDC, which consent shall not be unreasonably withheld, delayed or conditioned, mortgage or otherwise encumber HSW's leasehold interest in the Premises, nor assign or sublet or part with possession of the whole or any part of the Premises.

120. Section 11 of the Lease further provides that any attempt [by HSW] to mortgage, encumber, assign, or sublet without the required approval shall be void and the Lessee will be in default under the Lease.

121. HSW sought to assign or transfer an interest in the Lease to Leonite without HBDC's prior written consent.

21

122. HBDC has never consented to any assignment, transfer, or encumbrance of HSW's leasehold interest in the Premises to Leonite or any entity affiliated with Leonite.

123. HSW's attempted unauthorized assignment, transfer, or encumbrance of the Lease to Leonite constitutes a material breach of the Lease.

124. HBDC has fulfilled its obligations under the Lease.

125. HBDC at all times performed, and continues to be ready, willing, and able to perform its obligations as lessor under the Lease.

126. HBDC has suffered damage resulting from HSW's breach.

127. HBDC has suffered damages, including, but not limited to, loss of control over the leasehold, uncertainty regarding the identity and creditworthiness of the party in possession, and the need to incur additional legal fees to address the unauthorized assignment.

### COUNT VI – BREACH OF CONTRACT: WATER RIGHTS, INSURANCE, AND REPAIR AND MAINTENANCE

128. HBDC hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

129. The Lease contains specific provisions (1) allowing HBDC access to water on the Premises, (2) mandating Defendants to obtain appropriate insurance, and (3) requiring Defendants to repair damage to and maintain the Premises.

22

130. Defendants have breached the Lease and PPA by prohibiting and interfering with HBDC's right to extract water from the well on the Premises, failing to obtain general and casualty insurance called for under the Lease, and by failing to repair significant damage to the Premises.

131. HBDC has performed its obligations under the Lease.

132. HBDC at all times performed, and continues to be ready, willing, and able to perform its obligations as lessor under the Lease.

133. HBDC has suffered damages, in an amount to be proven at trial, resulting from Defendants' multiple breaches of the Lease.

WHEREFORE, Plaintiff HAWAII BREWERY DEVELOPMENT CO., INC., a Hawai'i Corporation respectfully requests judgment against Defendants as follows:

A.     For damages in an amount to be proven at trial;

B.     For a declaratory judgment that the Lease has been terminated and is of no force and effect, and that none of HSW, Leonite, or the Receiver has any rights to the Premises or the Property;

C.     For prejudgment and post-judgment interest;

D.     For its attorneys' fees, costs, and expenses;

E.     For an order and writ of possession for the portions of the Premises unlawfully occupied and/or held by Defendants;

U.S. Bankruptcy Court - Hawaii   #26-90013   Dkt # 1   Filed  05/15/26   Page 25 of 26

F.      For an order requiring that HSW, Leonite, and the Receiver vacate the Premises and placing HBDC back in possession of the Property;

G.      For damages for trespass against HSW, Leonite, and/or the Receiver, including loss of use and enjoyment of the property, loss of control over the property, and any other damages resulting from HSW, Leonite, and/or the Receiver's unlawful occupation, in an amount to be proven at trial; and

H.      For such other and further relief as this Court deems just and proper.

DATED:  Honolulu, Hawai'i, May 14, 2026.

/s/ *Bosko Petricevic*
BOSKO PETRICEVIC

/s/ *Kurt W. Klein*
ROBERT G. KLEIN
KURT W. KLEIN
DAVID A. ROBYAK
JAMES M. YUDA
JASON W. JUTZ

Attorneys for Plaintiff
HAWAII  BREWERY  DEVELOPMENT
CO., INC., a Hawai'i Corporation

24